IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

IN RE: HENRY LEE STEWART, JR. and       CASE NO.: 2:18-bk-15410
      KIMBERLY BRACKIN STEWART, DEBTORS       CHAPTER 7

**MEMORANDUM OPINION**

Before the court is a *Motion to Compel or Enforce* ("Motion") filed on April 4, 2020, by the Chapter 7 trustee, Hamilton M. Mitchell ("Trustee"), at docket entry 349 and *Defendants' Response to Motion to Compel or Enforce* ("Response") filed on June 9, 2020, by the debtor herein, Kimberly Brackin Stewart, at docket entry 402.  As separate debtor, Henry Lee Stewart, Jr., is now deceased, "debtor" herein shall refer to Kimberly Brackin Stewart; "Henry Lee Stewart" is Henry Lee Stewart, Jr.; "debtors" refers to them both.  The court held a hearing on the Motion and Response on July 7, 2020.  The Trustee and the debtor appeared personally and pro se; only the debtor testified.  At the conclusion of the hearing, the court took this matter under advisement.  For the reasons stated herein, the relief requested in the Motion is partially granted.  The Trustee is entitled to a nondischargeable judgment against the debtors in the amount of $33,400 plus costs and attorney's fees of $4000.  The court will enter a separate judgment contemporaneous with this opinion.

**I. Jurisdiction**

This court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (E).  The following opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052 made applicable to this proceeding under Federal Rule of Bankruptcy Procedure 9014.

## II. Procedural History

The debtors filed their Chapter 11 case on October 5, 2018. Their case converted to a Chapter 7 on June 25, 2019. (Ex. T-2.) In their Chapter 11 and in part of their Chapter 7, J. Brad Moore ("Moore") represented the debtors. At his request, the court relieved Moore of his responsibilities as counsel by its *Order Granting Motions to Withdraw as Counsel* entered on April 8, 2020. (Order Granting Motions to Withdraw as Counsel, Apr. 8, 2020, ECF No. 357.)[1]

Initially at issue were nine cashier's checks generated post-conversion by the debtors from their personal checking account with Henry Lee Stewart as both remitter and payee, for which the Trustee sought return or a satisfactory accounting. At the commencement of the July 7 hearing, the Trustee announced he had obtained enough information on four of the cashier's checks but remained interested in the other five. The four resolved items were all negotiated in January and February 2020; the five unresolved cashier's checks were negotiated in March 2020.[2]

The hearing record is rather sparse. However, a history exists that appropriately amplifies and clarifies the issues before this court. This history concerns two previous motions and an agreed order resolving same. Specifically, in paragraph 3 of his Motion, the Trustee incorporates by reference his previous *Renewed and Restated Motion for Turnover and Related Relief* ("Renewed Motion"). (Motion to Compel or Enforce, Apr. 4, 2020, ECF No. 349.) In the Renewed Motion, filed March 13, 2020, the Trustee recited that he had filed "his original Motion for Turnover (D.E. #302) on February 21, 2020, seeking turnover from the Debtors of certain proceeds, including the proceeds that are the subject of this Renewed Motion, and records related thereto." (Renewed

---

[1] Moore asked to be relieved in the case and in related adversary proceedings. The court takes judicial notice of the entry of this order.

[2] The record is unclear as to when cashier's check No. 2782 was negotiated.

2

Mot., Mar. 13, 2020, ECF No. 330, at 2.) The original Motion for Turnover raised concerns about missing insurance proceeds that were deposited into the same bank account from which the cashier's checks, here at issue, originated. Specifically,

> 4. The Debtors collected and deposited the following insurance proceeds in November-December 2019:
>
> | Deposit Date | Payor-Chk # | Memo | Amount |
> | --- | --- | --- | --- |
> | 11/12/2019 | Nationwide/Scottsdale Insurance Company-4914 | RCV Equip. | $27,569.00 |
> | 11/18/2019 | Nationwide/Scottsdale Insurance Company-8199 | Inv. Spoilage | $29,985.23 |
> | 12/2/2019 | Safeco Insurance-2321 | Clm #xxxxx7455 | $20,175.72 |
> | 12/2/2019 | Farmers Mutual-4898 | Clm #xxx90 | $20,839.00 |
> | | TOTAL | | $98,568.95 |
>
> 5. It is the Trustee's understanding that the date of loss was September 12, 2019. The foregoing insurance proceeds were initially or mediately deposited to an account in the name of Debtors at Bank of Commerce, Acct #xxx7001, in Oxford, MS. The account had an ending balance of $92,573.78 as of December 31, 2019.
>
> 6. Based on the records and information currently available to the Trustee, the Trustee reasonably believes the insurance proceeds, or a substantial part thereof, constitute property of the estate. More specifically, the Trustee reasonably believes that the insurance policies and claims cover and relate to property of the estate. Further, the Debtors used estate funds to pay the underlying insurance premiums before and after the conversion date.
>
> 7. The Debtors did not immediately or directly notify the Trustee of the underlying insurance claims or the receipt of the insurance proceeds. Instead, the Trustee learned of the matters the week ending February 14, 2020, in connection with carrying out his duties under 11 U.S. Code § 704.
>
> 8. The Trustee has requested Debtors to document the current remaining balance of the insurance proceeds. The Debtors' attorney has been unable to obtain documentation from his clients as of today's (sic). As such, the Trustee is uncertain of disposition of the current remaining balance of the insurance proceeds, if any. By the same token, the Trustee is reasonably concerned that the remaining balance of the insurance proceeds, if any, are subject to depletion by the Debtors.

(Motion for Turnover, Feb. 21, 2020, ECF No. 302, at ¶¶ 4-8.)

Thereafter, the Trustee filed his Renewed Motion and amplified in pertinent part his original Motion for Turnover. Specifically,

> 5. On October 16, 2018, the Debtors opened a deposit account at Regions Bank in the name of Henry L or Kimberly Stewart, Debtors-in-Possession, Case #2:18-bk-15410, General Account, Account #xxxxx7310 ("the DIP Account"), and thereafter deposited estate funds to the DIP Account.
>
> 6. On or about November 19, 2018, the Debtors took out an insurance policy underwritten by Scottsdale Insurance Company, Policy #xxxxxx9483 ("the Commercial Policy"), covering property of the estate located at 1037 HWY 6W, Oxford, Lafeyette County, Mississippi.
>
> 7. The total premiums and related charges due and paid under the Commercial Policy equaled $7,576.26 during the period of November 19, 2018—November 19, 2019. The Debtors paid $5,669.45 (74.83%) of said premiums during the Chapter 11 period using checks drafted on the DIP Account.
>
> 8. On or about December 13, 2018, the Debtors took out an insurance policy underwritten by State Auto Insurance, Policy #xxxxxx4817 ("the Old Homeowners Policy"), covering property of the estate located at 1039 HWY 6W, Oxford, Lafeyette County, Mississippi.
>
> 9. On or about February 28, 2019, the Debtor took out an insurance policy underwritten by Farmers Mutual Hail Insurance Company of Iowa, Policy #xx-xxx-xxx8980-19 ("the Crop Policy"), covering property of the estate (i.e., farm products) growing in Monroe County, Arkansas.
>
> 10. On or about October 2, 2019, and again on October 16, 2019, the Trustee requested the Debtors to produce copies of the insurance policies covering property located at 1037-39 HWY 6W, Oxford, Lafeyette County, Mississippi. Shortly thereafter, and without notifying the Trustee, the Debtors, on or about October 22, 2019, canceled the Old Homeowners Policy and replaced it with an insurance policy underwritten by Safeco Insurance, Policy #xxxxx6681 ("the New Homeowners Policy").
>
> 11. Shortly thereafter, and again without notifying the Trustee, the Debtors collected and deposited the following checks issued in payment of claims made under the Commercial Policy, the Crop Policy, and the New Homeowners Policy during the period of November 12–December 2, 2019 ("the Insurance Proceeds"):

4

| Deposit Date | Chk # | Policy | Clm # | Amount |
|---|---|---|---|---|
| 11/12/2019 | 1484914 | Commercial | xxxx142 | $27,569.00 |
| 11/18/2019 | 1488199 | Commercial | xxxx142 | $29,985.23 |
| 12/2/2019 | 48472321 | New Homeowners | xxxxxxx55-01 | $20,175.72 |
| 12/2/2019 | 8044898 | Crop | xx190 | $20,839.00 |
| | | TOTAL | | $98,568.95 |

12. The Insurance Proceeds were immediately or mediately deposited to a personal checking account in the name of the Debtors at Bank of Commerce, Account #xxx7001 ("the Personal Account").

13. On or about January 10, 2020, the Debtor withdrew $65,400.00 of the Insurance Proceeds from the Personal Account and used the funds to purchase the following certified checks from Bank of Commerce (collectively, "the Certified Checks"):

| Check Date | Chk # | Payee | Memo | Amount |
|---|---|---|---|---|
| 1/10/2020 | 2774 | Henry L Steward | House Repair Allowance | $8,000.00 |
| 1/10/2020 | 2775 | Henry Lee Stewart | House Repair Allowance | $8,000.00 |
| 1/10/2020 | 2776 | Henry Lee Stewart | House Repair Allowance | $8,000.00 |
| 1/10/2020 | 2777 | Henry Lee Stewart | House Repair Allowance | $8,000.00 |
| 1/10/2020 | 2778 | Henry Lee Stewart | House Repair Allowance | $8,000.00 |
| 1/10/2020 | 2779 | Heenry Lee Stewart | House Repair Allowance | $8,000.00 |
| 1/10/2020 | 2780 | Henry Lee Stewart | House Repair Allowance | $8,000.00 |
| 1/10/2020 | 2781 | Henry Lee Stewart | House Repair Allowance | $8,000.00 |
| 1/10/2020 | 2782 | Henry Lee Stewart | House Repair Allowance | $1,400.00 |
| | | TOTAL | | $65,400.00 |

Redacted copies of the deposit slip and check instruments are attached hereto as Exhibit A.

14. The records attached as Exhibit A were made available to the Trustee for the first time on the afternoon of March 11, 2020. The reproductions are stamped March 5, 2020—or, the day before the scheduled hearing on the [Motion for Turnover].

15. For the reasons set forth above, the Certified Checks constitute property of the bankrupt estate pursuant to 11 U.S. Code § 541(a)(1), (6), and/or (7), to wit the Certified Checks are the proceeds, products, offspring, rents, or profits of or from property of the estate, including, but not limited to, the Insurance Proceeds, the Commercial Policy, the Crop Policy, the New Homeowners Policy, and funds debited from the DIP Account.

16. To date, the Debtors have not provided records to the Trustee documenting that the Certified Checks have been cashed, deposited, negotiated or transferred. On that

> basis, the Trustee reasonably believes that the Debtors have possession, custody, and control of the Certified Checks.
>
> 17. Pursuant to 11 U.S. Code §§ 521(a)(4) and 542(a), the Trustee respectfully requests this Court to direct and order the Debtors to immediately deliver to the Trustee, and account for, the Certified Checks or the value of the Certified Checks, including proceeds, products, offspring, rents, or profits of or from the Certified Checks.

(Renewed Mot., at ¶¶ 5-17.)

### III. The Order

The court did not hear the Motion for Turnover or Renewed Motion. Rather, through an agreed order the court granted the Renewed Motion by its Order entered March 18, 2020. (Ex. T-1.) The Order granted the Renewed Motion "in all respects" and provided:

> that pursuant to 11 U.S. Code §§ 521(a)(4) and 542(a), the Debtors shall be and hereby are ORDERED and DIRECTED to IMMEDIATELY deliver to the Trustee, and account for, the Certified Checks attached hereto as Exhibit A or the value of the Certified Checks, including proceeds, products, offspring, rents, or profits of or from the Certified Checks.

(Ex. T-1.) Exhibit A to the Order lists the nine cashier's checks originally in question, numbered 2774 to 2782, inclusive of the five cashier's checks still in question, Nos. 2776, 2777, 2778, 2779, and 2782.

The Order is unequivocal. The pertinent issues raised in the Motion for Turnover and the Renewed Motion are resolved by the entry of the Order which concludes as a matter of law that the cashier's checks are both property of the estate and must be turned over to the Trustee under sections 521(a)(4)[3] and 542(a).[4] Significantly, the Order explicitly requires the debtors to deliver

---

[3] Section 521(a)(4) provides that "[t]he debtor shall—(4) if a trustee is serving in the case . . . . surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate[.]" 11 U.S.C. § 521(a)(4) (2020).

[4] Section 542(a) provides that "(a) [e]xcept as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of

to the Trustee and account for either the cashier's checks or the value of the cashier's checks.  (Ex. T-1.)

The Order resolved the issues raised in the Motion for Turnover and the Renewed Motion and represents a significant and in-part conclusive hurdle to the debtor's now belated attempt to explain away the disposition of the remaining checks.  Her failure to tender or account to the Trustee for all the cashier's checks per the Order has resulted in the filing of the instant Motion seeking enforcement.  Between filing the Motion and the July 7 hearing, the debtor successfully accounted to the Trustee with respect to four of the cashier's checks; the debtor apparently did not with respect to the remaining five.  Hence, the hearing.

## IV.  The Response

In her Response, the debtor attempts to account for the disposition of the cashier's checks rather than tender the checks or their value to the Trustee.  Having satisfied the Trustee with respect to four of the checks, the court focuses on the remaining five with the caveat that this court has already determined that the cashier's checks constitute property of the estate and ordered the debtors to turn over, account for, or tender their value to the Trustee.

From her Response, the court can glean the following: that there was damage to property, that the debtors filed a claim with their insurance, and that insurance checks were issued in the aggregate amount of $77,729.[5]  The debtor then states unequivocally in her Response that "[t]he

---

property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate."  11 U.S.C. 542(a) (2020).

[5] The debtor confirmed that exact number in her testimony.  The record is not clear and no explanation was provided for the discrepancy between the debtor's figure of $77,729 and the aggregate insurance amount referenced in the original Motion for Turnover and Renewed Motion of $98,568.95, other than a general reference to more than one property loss and accompanying

7

funds were used to repair the damages to their home." (Resp., June 9, 2020, ECF No. 402, at 1.) The debtor amplifies that statement to say that they also paid their lawyer, Moore, "with some of the proceeds."[6] (Resp., at 1.)

Starting with the operative insurance number of $77,729.00, the debtor seeks to account for the full disposition of eight of the cashier's checks aggregating $64,000 by generally stating that "[c]heck [n]umbers 2774 through 2781 were deposited into the Stewart Farm Fresh accounts and the [debtors] wrote checks to the contractors who did the repairs."[7] (Resp., at 1.) The debtor acknowledged that she was "unable to locate and/or determine what Check #2782 [the ninth check in the amount of $1400] was used for." (Resp., at 2.) To account specifically for the $65,400 in insurance proceeds related to the house and converted to cashier's checks, the debtor suggests the following five debits: (1) an invoice for $52,200; (2) an invoice for $5600; (3) checks written for repairs totaling $17,861.95; (4) $5000 in attorney's fees to Moore; and (5) cashier's check No. 2782 in the amount of $1400 (disposition uncertain). (Resp., at 1-2.)

These debits total $75,661.95 in repairs (items (1), (2), and (3)) plus $5000 to Moore for a total expenditure of $80,661.95 from the insurance proceeds. Facially, and presuming any excess debit above insurance proceeds came from the balance of the debtors' personal account, this appears and the debtor argues, to be a full accounting of the $65,400 in cashier's checks generated

---

claims. An explanation of multiple claims is also suggested in the Motion for Turnover, Doc. 302, p. 1, and the Renewed Motion in paragraphs 11 and 15.

[6] *See also* page 2, where the debtor asserts: "[a]dditionally, at or about the time the [debtors] received the insurance proceeds, their attorney, [Moore], advised them he needed an additional $5,000.00. The [debtors] told [Moore] all the money they had were the insurance proceeds and he told them they could pay him out of the proceeds. They subsequently sent [Moore] $5000.00." (Resp., at 2.)

[7] This statement is not entirely accurate as most of the cashier's checks were deposited into the debtor's personal account, with two checks deposited in Dale Kennedy's account, and two in the farm account. This is discussed in detail below.

8

on January 10, 2020.  This explanation, however, does not withstand exacting scrutiny when the debits are juxtaposed against the actual and eventual disposition of the remaining five cashier's checks in question.

### (1) and (2)  The Invoices

Through the debtor, the Trustee introduced the two receipts attached to the Response.  (Ex. T-3.)  Although characterized in the Response as invoices, these documents are actually receipts. The first receipt, from Alesondro Garcia, is dated December 18, 2019, and is for demolition and disposition of slabs and footing, rebuild, and "repour" in the aggregate of $52,200.  (Ex. T-3.)  The second is a receipt dated February 1, 2020, from Raul Lopez for painting in the amount of $5600. (Ex. T-3.)  The debtor testified that her husband, Henry Lee Stewart, handled this and would not have paid in full until the project was complete.  That is consistent with both receipts that recite "Paid in full Cash" and have boxes checked for "cash" for work done December 18, 2019, through January 11, 2020.  (Ex. T-3.)

As indicated, these two documents, which the debtor relied on in her Response, are not invoices.  The debtor did not introduce into evidence any actual invoices, contracts, work orders, written agreements, billing memos, or other supporting documents normally attendant to a construction project. Just two receipts totaling $57,800.  Both receipts are in the same handwriting, and the first receipt, dated December 18, 2019 (No. 523805), is sequentially *later* than the second receipt, dated February 1, 2020 (No. 523804).  (Ex. T-3.)  Both receipts reflect cash payments in full for repairs to the home for work completed no later than January 11, 2020.

The lack of supporting documentation, the debtor's suspect documentation, and inexplicably large payments of cash while in a Chapter 7 would alone raise suspicions concerning

9

these two receipts. But, as discussed below, the immediate significance of the receipts is the completion of the work prior to negotiation of the remaining five cashier's checks in question.

### (3) The Checks

The debtor attached to her Response a compendium exhibit made up of various checks to contractors totaling $17,861.95 (actually $17,861.87). (Resp., at 7-23.) The Trustee introduced an exhibit mirroring those checks. (Ex. T-12.) The exhibit contains sixteen checks; the earliest is dated January 16, 2020; the latest is dated February 23, 2020. All are written on the debtors' personal account at Bank of Commerce—the account from whence the cashier's checks originated—not the Farm Fresh account. No checks were written after February 23, 2020.

### (4) Attorney Fees

The $5000 payment to the debtors' attorney, Moore, did not take the form of a cashier's check but rather a separate regular check drawn on the same personal account dated January 9, 2020. (Ex. T-13 at 5.) This check cleared the debtors' personal checking account at Bank of Commerce on January 15, 2020. (Ex. T-13, at 1, 5.)

### (5) Cashier's Check No. 2782

The debtor acknowledged her uncertainty as to the disposition of the $1400 cashier's check. This check, while one of the remaining five under scrutiny by the Trustee, does not meaningfully affect the debtor's attempt to account for the bulk of the remaining cashier's checks.

### V. The Cashier's Checks

Recall that the Trustee alleged in his Motion for Turnover that the insurance proceeds were deposited in the debtors' personal account at the Bank of Commerce in Oxford, Mississippi. (Mot. for Turnover, at 1-2.) The Trustee referenced an ending balance in that account of $92,573.78 (actually $92,459.51) as of December 31, 2019. (Mot. for Turnover, at 2; Ex. T-13, at 1, 4.) This

10

approximately accords with Trustee's Exhibit 13 introduced at trial. (Mot. for Turnover, at 1-2; Ex. T-13, at 4.) The most significant debit to that account in January 2020 was the issuance of nine cashier's checks in the aggregate amount of $65,400. (Ex. T-13, at 2.) These cashier's checks, of course, are the nine checks originally of interest to the Trustee and for which he sought a full accounting.

In her Response and at the hearing, the debtor sought to account for all of the cashier's checks (excepting No. 2782 for $1400), including the other remaining four cashier's checks at issue, with the same generic explanation—that the money went to repairs on the house, as evidenced by the same two "invoices" (receipts), sixteen checks, and a $5000 payment to their attorney. The accounting suggested in her Response and her testimony at trial may have sufficed to explain part or parts of the other four cashier's checks; neither the debtor nor the Trustee explained their resolution at the hearing. The question remains, however, whether that explanation equally accounts for the four remaining cashier's checks, Nos. 2776, 2777, 2778, and 2779, each for $8000, for a total of $32,000.

The four cashier's checks were issued on January 10, 2020, and all four show Henry Lee Stewart as both the remitter and payee. Each check contains the same notation, "House Repair Allowance." (Ex. T-9; Ex. T-10; Ex. T-11.) This notation indicates that these four checks were used for the same purpose as the other cashier's checks. However, when coupled with the debtor's Response and testimony, it is clear that these four cashier's checks have not been satisfactorily accounted for. This begins with the lack of any real explanation why the debtors felt compelled to take insurance proceeds, deposit them into their personal Bank of Commerce account, and then, on January 10, 2020, withdraw $65,400 in the form of nine cashier's checks, Nos. 2774 to 2782, eight checks for $8000 each, one for $1400, all made payable to Henry Lee Stewart. (Mot., at 2;

11

Ex. T-4; Ex. T-5; Ex. T-6; Ex. T-7; Ex. T-9; Ex. T-10; Ex. T-11; Ex. T-13.) This atypical financial maneuvering while in a Chapter 7 immediately raises concerns that the debtor could have dispelled with a clear and valid explanation; the debtor provided no clear or valid explanation.

The Response also suggests that all of the cashier's checks were deposited into the Stewart Farm Fresh account from which checks were written "to the contractors who did the repairs." (Resp., at 1.) That is not entirely correct. Only one cashier's check was deposited into the Farm Fresh Account. Henry Lee Stewart endorsed two of the checks to Dale Kennedy ("Kennedy"), a business acquaintance of the debtors, who deposited them into Kennedy's account. Henry Lee Stewart deposited the fourth check into his personal checking account. Equally, the four cashier's checks could not have been used to write "checks to the contractors who did the repairs" as all four checks were converted to cash. No paper trail—invoices, work orders, or receipts—were provided to reflect any payments to contractors from these proceeds. All the documentation presented by the debtor in her Response and at trial *preceded* the negotiation of the last four checks.

Specifically, check number 2776 in the amount of $8000, made payable to "Henry Lee Stewart," appears to have been endorsed by Henry Lee Stewart, then Kennedy, and then deposited into Kennedy's account at First Horizon on March 9, 2020. (Ex. T-9, at 1.) Similarly, check number 2778 in the amount of $8000, made payable to "Henry Lee Stewart," appears to have been endorsed by Henry Lee Stewart, then Kennedy, and then also deposited at First Horizon on March 9, 2020. (Ex. T-9, at 2.) Contra to her Response, the debtor testified that she had no idea where these two checks were deposited. Kennedy subsequently made two $8000 cash withdrawals from First Horizon, first on March 17 and then on March 23, 2020. (Ex. T-9, at 5-6.) The debtor testified that she did at one time inquire of Kennedy, who told her that he had cashed the checks for the construction workers who did not have checking accounts. Again, no documents, including

12

invoices, work orders, or receipts, support this assertion. She contends the $16,000 aggregate never went to the debtors, but the explanation suggested in her Response is completely misleading with respect to the actual negotiation of these two items.

Second, Henry Lee Stewart deposited check number 2777 in the amount of $8000 into the debtors' Bank of Commerce checking account, the same account from whence it originated, on March 13, 2020. (Ex. T-10 at 1; Ex. T-13, at 15.) The debtor confirmed that Henry Lee Stewart cashed the check the same day; she had no idea how the $8000 was spent. (Ex. T-10.) Again, this is completely contrary to the explanation offered in her Response.

Third, check number 2779 appears to have been deposited into the Stewart Farms Fresh account at the Bank of Commerce, the business account that also lists Henry Lee Stewart, on March 12, 2020, and then immediately withdrawn as cash. (Ex. T-11.) The debtor testified that she did not handle the check and had no idea why it was deposited and then immediately cashed. Again, this is completely contrary to the explanation offered in her Response.

So, when it comes to the last four checks in question, only one was deposited in the Stewart Farm Fresh account and the only paper trail that exists as to the disposition of the proceeds indicates the checks were cashed. They were not, as stated in the Response and inclusive of these four cashier's checks in question, "deposited into the Stewart Farm Fresh accounts and the [debtors] wrote checks to the contractors who did the repairs." (Resp. at 1.)

## VI. Turnover

Further infirmities in the debtor's accounting exist. The debtor testified at trial. Other than admitting knowledge of the Order, she, for the most part, deferred and displaced responsibility for the cashier's checks on her now deceased co-debtor/husband. However, several immediate conclusions become self-evident.

First, the Trustee filed his original Motion for Turnover seeking delivery and accounting for specific insurance proceeds on February 21, 2020. These proceeds funded the cashier's checks. (*See* Renewed Mot.; Response.) On March 13, 2020, the Trustee filed his Renewed Motion seeking an accounting or turnover of the cashier's checks. The debtors agreed to the Order, entered on March 18, 2020, to turn over and account for the cashier's checks. Right before doing so, between March 9 and March 13, the debtors put the proceeds of the four cashier's checks unaccounted for beyond the Trustee's reach.[8] All this was done with full knowledge of the original Motion for Turnover and during the pendency of an agreement and resulting Order requiring the debtors to fully account for all nine of the cashier's checks.[9]

Second, four of the purported expense categories (again, excepting No. 2782) outlined above and interposed as an accounting in the debtor's Response were completed and paid for in full no later than February 23, 2020, the last date on a personal check to a contractor. (Resp., at 2; Ex. T-12.) Equally, the record is clear that as of that date, February 23, 2020, the four cashier's checks at issue remained in the debtors' possession; these checks were not negotiated or deposited until, at the earliest, March 9, 2020.[10] In other words, no part or parts of the $32,000 in aggregate cashier's checks at issue were used or included in the repairs and construction as suggested in the debtor's Response. The two "invoices" were actually receipts and reflected payment in full in cash in the aggregate amount of $57,800, no later than February 1, 2020. (Ex. T-3.) The "[c]hecks

---

[8] The actual date that the fifth check, No. 2782 for $1400, was negotiated remains uncertain.

[9] The debtor acknowledged in her testimony that no part of $32,000 aggregate of these four checks were ever redeposited in either their personal account or the Stewart Farm Fresh business account.

[10] The same date two of the checks were endorsed and deposited into Kennedy's account.

14

written for the repairs totaling $17,861.95," (actually $17,861.87) show no personal checks for repairs later than February 23, 2020. (Resp., at 2; Ex. T-12.) And finally, the fourth debit, the $5000 payment to their attorney, Moore, cleared the debtor's personal checking account on January 15, 2020. (Ex. T-13, at 1, 5.) Therefore, all of the "accounting" set forth in the Response and explained through the debtor's testimony concluded by the end of February 2020, at a point in time when the debtors still retained possession of at least four of the cashier's checks in question in the amount of $32,000. Without explanation and within a few days, between March 9 and 13, those four cashier's checks were either directly or indirectly through Kennedy converted to cash thereby putting $32,000 out of the Trustee's reach while motions were pending that lead to the debtors' agreement to turn over and account to the Trustee for those four specific cashier's checks.[11]

Finally, the debtor's Response interposes the three construction-related debits and the payment to Moore to account for all eight of the cashier's checks.[12] Equally, in the same Response, she defends their actions by saying that by the time the Trustee had filed his Renewed Motion on March 13, 2020, and upon entry of the Order on March 18, 2020, the debtors "had already completed the repairs on their residence using the insurance proceeds." (Resp., at 2.) This argument fails for the same reasons as stated above; the debtor is attempting to account for the four cashier's checks in question based on expenditures incurred and paid for *prior* to the

---

[11] The Trustee introduced one exhibit that was an email from the debtor to Moore on March 1, 2020. It lists debits, checks, and receipts plus labor for a total as of February 27, 2020, of $95,892. (Ex. T-8.) The debtor testified that she did not send the email even though it was on her email address. Nor could she remember anything about it. It is impossible to tell what this email means in context, especially as there were other referenced but unquantified insurance claims, and, more significantly, references to "debits, checks, and receipts" already expended at a time when the debtors still had possession of the four cashier checks in question. (Ex. T-8.)

[12] As previously stated, the debtor in her response acknowledged she was unable to account for cashier's check 2782 in the amount of $1400. (Resp., at 2.)

negotiation and cashing of all four checks. No evidence of payments for repairs, construction, or attorney's fees exists after February 23, 2020; all four of the last cashier's checks in question were negotiated after the Trustee filed his original Motion for Turnover; all were converted to cash within a few days of the Trustee filing his Renewed Motion and entry of the Order. (Ex. T-1; Ex. T-9; Ex. T-10.) Simply stated, expenses incurred and paid for in January and February 2020 cannot explain or "account for" the disposition of cashier's checks converted to cash in March 2020.

## VII. Conclusion

For the reasons stated above, the Motion is granted in part, and the Trustee is entitled to a nondischargeable judgment against the debtors in the amount of $33,400 plus costs and attorney's fees of $4000. The court will enter a separate judgment contemporaneous with this opinion.

IT IS SO ORDERED.

Dated this 31st day of July, 2020.

_____
HONORABLE RICHARD D. TAYLOR
UNITED STATES BANKRUPTCY JUDGE

cc: Kimberly Stewart
    Hamilton M. Mitchell
    U.S. Trustee